AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| LODGED |
| :---: |
| CLERK, U.S. DISTRICT COURT |
| 8/7/25 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: _____MRV_____ DEPUTY |

| FILED |
| :---: |
| CLERK, U.S. DISTRICT COURT |
| 8/7/2025 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: _____clee_____ DEPUTY |

United States of America

v.

STEVEN TAYLOR,

Defendant(s)

Case No. 2:25-mj-04910-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of October 12, 2022, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 1344 | Bank Fraud |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
_____
Complainant's signature

Ian Faith, FBI Special Agent
_____
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: August 7, 2025

_____
Judge's signature

City and state: Los Angeles, California

Hon. Steve Kim, U.S. Magistrate Judge
_____
Printed name and title

AUSA: Kerry L. Quinn x5423

**AFFIDAVIT**

I, Ian Faith, being duly sworn, declare and state as follows:

## I.    INTRODUCTION

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since June 2021. I am currently assigned to a Public Corruption Squad, where I specialize in the investigation of suspected public corruption offenses, including but not limited to federal conduit contributions, bribery, and extortion (particularly of public officials), fraud against the government, campaign finance fraud and money laundering.  In addition, I have received training in the investigation of public corruption and associated white-collar crimes.

## II.    PURPOSE OF THE AFFIDAVIT

2.    This affidavit is made in support of a criminal complaint and arrest warrant against STEVEN TAYLOR for a violation of 18 U.S.C. § 1344 (Bank Fraud).

3.    I am working on this investigation with other agents from the FBI, the Federal Housing Finance Agency – Office of Inspector General, and the Internal Revenue Service – Criminal Investigation Division.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the complaint and arrest warrant and does not purport to set forth all of my knowledge of

1

or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. STATEMENT OF PROBABLE CAUSE

  A. **Summary of Probable Cause**

  4. There is probable cause to believe STEVEN TAYLOR submitted fake bank records and made false statements concerning cash deposits to obtain a $3 million credit line from CalPrivate Bank, a federally insured financial institution.  The bank records are fake insofar as either the referenced accounts do not exist or the statements do not match the real statements obtained from the relevant financial institutions – with the fake statements showing millions of dollars in fake deposits.  Likewise, the false cash and liquidity representations falsely state that TAYLOR maintained millions of dollars cash in accounts that either did not exist or did not have the stated deposits.  CalPrivate Bank representatives said that these false records and false liquidity representations were important to the bank in determining whether to extend and to keep open TAYLOR's credit line.

  B. **Supporting Evidence**

  5. I have reviewed documents produced by CalPrivate Bank, J.P. Morgan Chase Bank N.A. ("JPMC"), First Republic Bank (through its acquirer JPMC), and 1st Century Bank, and I have participated in interviews of representatives of CalPrivate Bank and spoken to other agents who have participated in those interviews.  From these records, I know the following:

   a. The bank statements submitted to CalPrivate for TAYLOR to obtain a $3,000,000 unsecured credit line on or about October 12, 2022, loan number 660453, include purported statements from an account at 1st Century Bank ending x25129 for July and August 2022, and an account at J.P. Morgan Chase Bank N.A. ("JPMC") ending x77221 for July and August 2022.

   b. The account statements for 1st Century Bank do not match the real account statements for this account and show millions of dollars in deposits that were not in the accounts. That is, the fake 1st Century statements purportedly for July and August 2022, for an account ending x25129, both show an ending balance of $3,914,000.00, while the real ending balance for that account for July 31, 2022 was $19,790.66, and the real ending balance for August 31, 2022 was $17,176.19. In other words, TAYLOR submitted or caused to be submitted bank records that inflated cash on deposit in the account and falsely stated that he had approximately $3.9 million dollars more in the 1st Century account than he did.

   c. It appears the account ending x77211 at JPMC does not exist. JPMC is re-reviewing its records, but thus far, representatives from the bank have not been able to locate the account. The apparently fake account statements both show ending balances of $1,127,921.00.

   d. The fake bank statements are part of a file titled "Liquidity."[1]

---

[1] This file also includes what appear to be real bank statements from an account at First Republic Bank.

   e. Additional fake bank statements were submitted in connection with annual renewals of this line and/or liquidity verifications, including fake statements submitted as recently as May 2025, from an email address belonging to TAYLOR, steven@taylorequities.com ("TAYLOR's Email Account").[2]

   f. A letter from CalPrivate Bank addressed to TAYLOR, dated September 16, 2022, outlined the terms on which CalPrivate Bank would agree to extend a $3,000,000 line of credit, and among them was a requirement (called a "covenant") that TAYLOR's existing (unsecured) line of credit with another bank, specifically 1st Century Bank, be closed and that TAYLOR obtain no other unsecured lines of credit.  In particular, the letter stated that, as a condition of extending the $3,000,000 line of credit, CalPrivate Bank was requiring that the "First Century line of credit be retired," and that TAYLOR obtain "[n]o other unsecured lending."

   g. Interviews with CalPrivate Bank representatives, including the Chief Credit Officer for the bank, confirm that the representations regarding cash deposits, including the bank statements submitted as part of liquidity verifications, were important to the bank in determining whether to extend and to keep open TAYLOR's line of credit, as were the representations regarding TAYLOR's closing of his line with 1st Century Bank.

---

[2] On May 20, 2025, the Honorable Brianna Fuller Mircheff, United States Magistrate Judge, issued a warrant (Case No. 2:25-mj-02842) for searches of Microsoft email accounts, including steven@taylorequities.com (the "First Warrant").

  h. According to information provided by CalPrivate Bank, as part of TAYLOR's submissions regarding his closing of the 1st Century Bank credit line, TAYLOR sent what purports to be an email chain between him and a representative of 1st Century Bank supposedly confirming that his credit line with 1st Century Bank had been closed.

  i. Agents have investigated the authenticity of this email chain (which includes two emails – one from TAYLOR to the bank asking for confirmation that the line of credit has been closed, and a reply email from a bank representative stating it was closed), and the email chain appears to be forged. That is, representatives of 1st Century Bank (and documents the bank produced) confirmed that the line of credit had not been closed. Further, the email chain does not appear in TAYLOR's Email Account, which is being searched pursuant to the First Warrant, and representatives of 1st Century Bank confirmed they were unable to locate this email chain in the email account of the relevant 1st Century Bank representative. The bank did find two emails that were sent at the exact same date and time (to the minute) with the same recipients and senders, but the "Re:" line is different and the subject matter concerns wire transfers, not the credit line.

  j. Other indications that the email chain is forged include the language used to refer to the credit line, which in the forged email is referred to as "LOC," but in other emails is written out "line of credit," and the phrase "[External Email]" appears in one of the emails in the real email chain and in

5

other emails the bank exchanged with outside parties, but that phrase is not in the apparently forged emails.

   k. Further, contrary to the representation in the forged emails, other emails in the days before and after the date on the forged emails show requests for draw downs on the still-open credit line, and as stated above, other documents from 1st Century Bank show TAYLOR did not retire or close the $1,000,000 unsecured line of credit as required by CalPrivate Bank as part of the terms of its credit line. Instead, he continued to draw down on that credit line while he also maintained and used the $3,000,000 unsecured credit line from CalPrivate Bank.

 6. According to publicly available information, the deposits of CalPrivate Bank were federally insured at all relevant times.

 7. The investigation has revealed additional evidence that TAYLOR (potentially with others) submitted fake bank statements and/or made false statements concerning cash deposits in applying for or maintaining loans or lines of credit with other banks. The fake bank statements submitted to these lenders similarly reference accounts that do not exist or show millions of dollars in fake deposits as well as false cash and liquidity representations falsely asserting that TAYLOR maintained millions of dollars cash in accounts that either did

not exist or did not have the stated deposits.[3]  These fraudulently obtained loans include:

      a.  a $1 million unsecured line of credit from 1st Century Bank issued to TAYLOR;

      b.  a $6,352,500 mortgage loan from First Republic Bank to TAYLOR (and his wife) to purchase a residence at 200 North Gunston Drive, Los Angeles, CA 90049;

      c.  a loan of approximately $11,805,000 issued by PGIM, Inc. ("PGIM") to TAYLOR (through an affiliated business entity or entities) and potentially others, secured by a multi-family property located at 2041 N Commonwealth Ave, Los Angeles, CA 90027;

      d.  a loan of approximately $8,605,000 issued by PGIM to TAYLOR (through an affiliated business entity or entities) and potentially others, secured by a multi-family property located at 6021-6029 Carlton Way, Los Angeles, CA 90028;

      e.  a loan of approximately $4,000,000 issued by HomeStreet Bank to TAYLOR (through an affiliated business entity or entities), secured by a multi-family property located at 2065 Rodney Drive, Los Angeles, CA 90027; and

      f.  a loan of approximately $2,550,000 issued by HomeStreet Bank to TAYLOR (through an affiliated business entity

---

[3] Based on a review of documents produced by CalPrivate Bank and other lenders, I know that, in at least one instance, the same exact fake bank statements, line for line and word for word (with just dates changed), submitted to CalPrivate Bank were submitted to another lender in connection with a loan issued by that financial institution.

7

or entities), secured by a multi-family property located at 438 Union Dr, Los Angeles, CA 90017.

8. Agents are also investigating other mortgage loans that TAYLOR obtained from additional financial institutions, with the total original, principal amount of loans under investigation exceeding an estimated $150 million.

9. Documents from TAYLOR's Email Account show emails between TAYLOR and others working for him in which TAYLOR is directing others to modify bank records using photoshop software, in situations indicating that the forged bank records were to be submitted to lenders as part of loan applications.

10. On August 7, 2025, TAYLOR was interviewed in connection with a search warrant executed at his residence, and he was asked about the submission of fabricated and false bank statements in support of loan applications and lines of credit, including the CalPrivate Bank line of credit, and he acknowledged, or at least did not deny, that such false and fabricated statements were submitted, claiming something to the effect of: everybody does it.

## IV. **CONCLUSION**

11. For all the reasons described above, there is probable cause to believe that TAYLOR has committed a violation of 18 U.S.C. § 1344 (Bank Fraud).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this __7th__ day of
August, 2025.

_____ STEVE KIM
UNITED STATES MAGISTRATE JUDGE